# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN ARCHAVAGE, on his own behalf and on behalf of all other similarly situated, | CIVIL ACTION NO. 3:16-CV-00319 |
| Plaintiffs, | |
| v. | (SAPORITO, M.J.) |
| PROFESSIONAL ACCOUNT SERVICES, INC., | |
| Defendant. | |

## MEMORANDUM

On January 25, 2016, this civil action was initiated by Steven Archavage on his own behalf and on behalf of all others similarly situated in the Court of Common Pleas of Luzerne County filed to Docket No. 2016-566.  Archavage named Professional Account Services, Inc. ("PAS") as the defendant.  PAS is a debt collector in the business of collecting debts. (Doc. 2 ¶ 17).  In his complaint, Archavage asserted several Pennsylvania claims for unfair and deceptive debt collection activities on behalf of himself and other persons similarly situated under (1) the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq*.; (2) common law fraud; (3) the Unfair Trade Practices and

Consumer Protection Law, 73 P.S. § 201-3; (4) the Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5703; and (5) for unjust enrichment.

On February 22, 2016, PAS filed a notice of removal (Doc. 1) to this court alleging subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) (diversity of citizenship and amount in controversy greater than $5,000,000) and 28 U.S.C. § 1331 (federal question).  Before the court is Archavage's motion to remand (Doc. 5) the case to the Court of Common Pleas of Luzerne County.  The parties have fully briefed the issues and for the reasons set forth herein we will grant the motion.

I.    *Background*

Archavage has alleged that on various occasions in 2012, he received medical treatment at the Wilkes-Barre General Hospital (the "hospital") for which the hospital sought payment.  (Doc. 2 ¶ 18).  Most of the medical bills were processed and paid by applicable insurance and when some of the bills went unpaid, the hospital sent the unpaid bills to PAS for collection. (*Id.* ¶ 19).  Archavage alleges that PAS conducted its collection activity under the guise of being the original

2

creditor, wrongfully cloaking itself with the identity of the creditor and referring to itself as the original creditor. (*Id.* ¶10).

He further alleged that PAS learned that Archavage's unpaid medical bills of the hospital should have been paid by his workers compensation insurance carrier. (*Id.* ¶ 22). Thereafter, Archavage alleged that in an attempt to ascertain information about the outstanding hospital bills, a representative of PAS made a telephone call to the workers compensation carrier's third party administrator. (*Id.* ¶ 23). During the call, the PAS representative unlawfully recorded the telephone call, failed to identify herself as a debt collector, falsely claimed that she was calling from the hospital, requested and received the name and contact information of the workers compensation claims adjuster, and failed to secure the appropriate consent from Archavage. (*Id.* ¶¶ 23-28). Archavage asserts that at least three of PAS's female representatives telephoned the adjuster for his workers compensation carrier as well as his counsel and represented themselves as being from the hospital or "the business office," or the "corporate office from the hospital." (*Id.* ¶¶ 29-37). During all of those calls to counsel, (1) the representatives concealed that they were debt collectors, (2) failed to

state they were attempting to collect a debt, (3) created phony letterhead of the hospital and sending it by facsimile to counsel, and (4) unlawfully tape recorded the telephone conversations. (*Id.* ¶¶ 38-45).

By way of history, on February 14, 2013, Archavage had filed a different, prior suit against PAS in the Court of Common Pleas of Luzerne County ("*Archavage* I"). (Doc. 6-2, at 2).  This action is active and still pending in the Luzerne County Court of Common Pleas. (*Id.*). In that lawsuit, Archavage has alleged that his claims are based on PAS's collection activities relative to his unpaid medical bills, and PAS is liable for damages based on the following:

1.   Violation of the Fair Debt Collection Act – 15 U.S.C.A. § 1692;
2.   Fraud;
3.   Violation of the Pennsylvania Fair Credit Extension Uniformity Act – 73 P.S. § 2270.4;
4.   Violation of the Unfair Trade Practices and Consumer Protection Law – 73 P.S. § 201-3.

(*Id.*).  Furthermore, Archavage claimed that PAS used the telephone and other instrumentalities of interstate commerce in its attempts to collect debts, and specifically a debt allegedly owed by Archavage.  (*Id.*).

On December 8, 2015, Archavage had also filed a separate prior class action complaint in the Court of Common Pleas of Luzerne County ("*Archavage* II"). (*Id.* at 58). There, Archavage alleged those same violations of state and federal law as in *Archavage* I. (*Id.*). The complaint in *Archavage* II alleged the total amount in controversy for each member as less than $75,000, and it also alleged that members of the class in Pennsylvania exceed one-thousand persons. (*Id.* at 62, 71). PAS then filed a notice of removal on January 12, 2016, and *Archavage* II was removed to this Court. (*Id.* at 87). After a scheduling order was signed by the Honorable Richard P. Conaboy (*Id.* at 125), Archavage filed a notice of voluntary dismissal of that action, without prejudice. (*Id.* at 127).

On January 25, 2016, Archavage filed the instant action against PAS ("*Archavage* III") in the Court of Common Pleas of Luzerne County Pennsylvania. (Doc. 2). This complaint contains the same factual basis as those previously filed; however, Archavage removed all explicit claims based on federal statutes. (*Id.*). Nevertheless, in his complaint, Archavage refers to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and references the FDCPA's purpose to eliminate

abusive debt collection practices by debt collectors. (*Id.* ¶ 2). However, he claims that the Pennsylvania law counterpart, the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), also provides that if a debt collector violates any of the provisions of the FDCPA, it shall constitute a violation of the FCEUA under 73 Pa. Stat. Ann. § 2270.4(a). (*Id.* ¶¶ 2-4). Archavage makes no explicit claim for relief under the FDCPA in *Archavage* III.

In this case, Archavage explicitly states that the total amount in controversy for Archavage and those similarly situated is $5,000,000 or less." (*Id.* ¶ 13). Furthermore, Archavage asserts that the members of the class in Pennsylvania and as described in paragraph 8 of the complaint are less than or equal to 100 in number. (*Id.* ¶ 61). PAS timely filed a notice of removal on February 22, 2016 (Doc. 1), and Archavage has subsequently filed the instant motion to remand which is now before this Court for disposition. (Doc. 5).

## II. *The Removal Standard*

28 U.S.C. § 1441 governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed

by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).   "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).   Where a motion for remand is filed, the defendant has the burden of proving that removal was proper. *Scanlin v. Utica First Ins. Co.*, 426 F. Supp. 2d 243, 246 (M.D. Pa. 2006) (citing *Boyer*, 913 F.2d at 111).   In removal cases, the existence of federal court jurisdiction is usually determined under the well-pleaded complaint rule, which provides that federal question jurisdiction is established when the face of a properly pleaded complaint asserts a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). The well-pleaded complaint rule "makes the plaintiff the 'master of the claim,' meaning that he or she may avoid federal jurisdiction by foregoing federal causes of action and basing the claim on only state law." *Scott v. Sysco Food Serv. of Metro N.Y., L.L.C.*, Civ. A. No. 07-

3656(SRC), 2007 WL 3170121, at *2 (D.N.J. Oct. 26, 2007) (citing *Caterpillar*, 482 U.S. at 392).

III. ***Discussion***

PAS has removed this action from state court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. PAS contends that Archavage has strategically fashioned the pleadings to avoid Federal court jurisdiction. (Doc. 1 ¶ 11). Archavage urges us to grant the remand motion because PAS has failed to meet its burden of proving diversity of citizenship and that the amount in controversy exceeds $5,000,000. Further, Archavage maintains that as the master of the complaint, he can choose to seek state law remedies only and not invoke federal question jurisdiction.

We begin our analysis with the pertinent statutes. A defendant in any civil action brought in a state court which the district courts of the United States have original jurisdiction may be removed to the district court of the United States for the district embracing the place where such action is pending. 28 U.S.C. § 1441(a). Removal can be based upon diversity of citizenship provided that the defendant is not a citizen

8

of the State in which such action is brought.   28 U.S.C. § 1441(b)(2). Removal can also occur if the civil action includes a claim arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331.   28 U.S.C. § 1441(c)(1)(A).

### A.  *PAS has failed to prove its citizenship*

Removal, based upon diversity of citizenship, is permitted if the matter in controversy exceeds the value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of the class of plaintiff is a citizen of a State different from any defendant and the number of members is less than 100.  *See* 28 U.S.C. § 1332(d)(2)(A) and 28 U.S.C. § 1332(d)(5)(B).   It is the defendant's burden to prove diversity of citizenship.  *Boyer,* 913 F.2d at 111 (3d Cir. 1990).   Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor if remand.  *Id.*   Here, PAS maintains that it is a Tennessee corporation with a principal place of business located in Brentwood, Tennessee. (Doc. 1 ¶ 4).   Although PAS was served at a location in Pennsylvania, it contends that it has no physical presence in Pennsylvania. (Doc. 6-1, at 10).   As a result, PAS simply concludes that diversity of citizenship is easily satisfied. (*Id.*).   A corporation is deemed

9

to be a citizen of every State by which it is incorporated and of the State where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

Archavage correctly points out that the complaint asserts a class of plaintiffs limited to not more than 100 Pennsylvania citizens.  (Doc. 5-1, at 1; Doc. 2 ¶¶ 8, 61).  Further, the complaint alleges that PAS "either has its principal place of business in Pennsylvania, or does sufficient business in, or has sufficient minimum contacts with, or intentionally avails itself of the markets of the Commonwealth of Pennsylvania through its business operation in Pennsylvania."  (Doc. 2 ¶ 14).  In its notice of removal, PAS alleged that it "has a business office located at c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110."  (Doc. 1 ¶ 5).  PAS has sufficiently proved that it is a corporation organized under the laws of the State of Tennessee. (Doc. 6-2, at 195).  However, it has not addressed whether it has its principal place of business in Pennsylvania.  Rather, in its opposition brief, PAS correctly states the law that the principal place of business in federal diversity jurisdiction refers to the place where a corporation's officers direct, control, and coordinate the corporation's activities—its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  It has not

submitted any proof that Tennessee and not Pennsylvania is its principal place of business. We are left to decide the issue on the plaintiffs' uncontradicted allegation that PAS's principal place of business is Pennsylvania. Under these circumstances, and resolving all doubts in favor or remand as we must, we find that PAS has failed to prove diversity of citizenship.

### B. PAS has failed to demonstrate that the amount in controversy exceeds $5,000,000

We now must decide whether this putative class action case removed to a federal court as a diversity matter properly meets the requisite amount in controversy set by the Class Action Fairness Act of 2005, ("CAFA") 28 U.S.C. § 1332(d). It is now settled that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006) ("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied."). Like the plaintiff in *Morgan,* here Archavage expressly limited the amount in controversy to an amount lower than the

jurisdictional requirement, stating in the complaint that "the total amount in controversy for the named plaintiff and each member is $5,000,000 or less. (Doc. 2 ¶13).   *Morgan,* reiterated the Supreme Court's long held rule that plaintiffs may limit their claims to avoid federal subject matter jurisdiction.   *Morgan* 471 F.3d at 474*; St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938) ("if [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount and though he would be justly entitled to more, the defendant cannot remove.").   CAFA does not challenge the proposition that the plaintiff is the master of his own claims.   *Morgan,* 471 F.3d at 474.   As *Morgan* stated, because the plaintiff is the "master of the case" and "may limit his claims . . . to keep the amount in controversy below the threshold," the removing party must "show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands."   *Id.*   There is, however, a broad good faith requirement in a plaintiff's complaint with respect to the amount in controversy.   *Red Cab*, 303 U.S. at 288; *Golden v. Golden,* 382 F.3d 348, 354-55 (3d Cir. 2004).   Good faith in this context is entwined with the "legal certainty"

test, so that a defendant will be able to remove the case to federal court by "show[ing] to a legal certainty that the amount in controversy exceeds the statutory minimum[.]" *Samuel-Bassett*, 357 F.3d at 398. Thus, *Morgan* held where the plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, applying the maxim that the plaintiff is the master of her own complaint, the proponent of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy exceeds the statutory threshold. *Frederico v. Home Depot*, 507 F.3d 188, 195 (2007).

Here, PAS urges us to deny the motion on the basis of Archavage's settlement demand of $45,000 which, it contends, represents the value of Archavage's claim. (Doc. 6-1, at 12).  However, PAS ignores the values it placed on the case when it offered Archavage $8,000 on one occasion and $11,000 on another occasion to settle the case.  (Doc. 6-2 at 198-199).  Moreover, in his brief, Archavage claims that PAS's last settlement offer to Archavage was $25,000. (Doc. 5-1, at 12).  PAS's brief is silent on any increase of settlement beyond $11,000.  As it is PAS's burden to prove that the amount in controversy exceeds $5

million, these offers of settlement multiplied by 100 potential class members falls woefully short of the threshold to invoke federal court jurisdiction even if attorney's fees and punitive damages were added in. Also, in its answers to Archavage's interrogatories, PAS stated that there were no accounts referred to it by the hospital beginning November 19, 2010, where PAS held itself out as the "Wilkes-Barre General Hospital" to the consumer. (Doc. 5-2, at 10). Therefore, it can be reasonably concluded that PAS is asserting that this is not a class action and therefore has no basis to invoke CAFA. Thus, removal based upon diversity of citizenship and amount in controversy fail. Our inquiry does not end there.

### C. *PAS has not sustained its burden to invoke federal question jurisdiction*

In its notice of removal, PAS has asserted that this court would have had original jurisdiction under 28 U.S.C. § 1331 because Archavage's complaint alleged that PAS violated the FCEUA which mirrors the FDCPA. (Doc. 1 ¶¶ 9-10). However, in its opposition brief, PAS makes no argument supporting federal question jurisdiction other than to conclude that the facts as pled by the plaintiffs support federal

court jurisdiction based upon diversity of citizenship "and/or" federal question. (Doc. 6-1, at 9).  Perhaps PAS has abandoned removal on the basis of federal question.

Nevertheless, under 28 U.S.C. § 1441, a case is removable to the federal district court embracing the place where the action is pending if the district court has original jurisdiction.  Under 28 U.S.C. § 1331, the district courts have original jurisdiction over any federal claim arising under the Constitution, laws, or treaties of the United States.  Courts generally determine removal jurisdiction based on the pleadings on the state court docket at the time of removal, *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939), assuming as true all factual allegations in the complaint.  *Steel Valley Auth.,* 809 F.2d at 1010.  The Supreme Court has instructed that "[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.  Further, the Court adds that this rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*  However, "[t]he

state suit need not invoke a federal law in order to arise under it for removal purposes.  It is sufficient that the merits of the litigation turn on a substantial federal issue that is an element, and an essential one, of the plaintiff's cause of action." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).  Also, a consequence to the well-pleaded complaint rule is the "further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

Here, the complaint does not make any claims under federal law. The complaint does not request that the state court rule upon the FDCPA or any other federal law.  This case does not present a situation where a substantial, disputed question of federal law is a necessary element of the plaintiff's well-pleaded state claims.  *Smith v. Northland Grp., Inc.*, No. 3:13-CV-249, 2013 WL 1766775 at *4 (M.D. Pa. Apr. 24, 2013) (a section of a potential state cause of action referencing the FDCPA to determine what constitutes an unfair or deceptive debt collection act or practice does not give rise to federal question jurisdiction).

Accordingly, we find that PAS has not demonstrated that this court would have had original jurisdiction on the basis of federal question under 28 U.S.C. § 1331.

An appropriate order follows.

**_s/ Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  March 29, 2017